FILED
2013 Aug-23  AM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, ) ) ) ) Plaintiff ) ) vs. ) ) METLIFE, INC., et al., ) ) Defendants ) | Case No. 2:12-cv-02626-HGD |

# **O R D E R**

The above-entitled civil action is before the court on the Motion to Remand filed by plaintiff, City of Birmingham Retirement and Relief System.  (Doc. 12).  Defendants, Metlife, Inc., et al.,[1] removed this action from the Circuit Court of

---

[1] The named defendants are MetLife, Inc.; C. Robert Henrikson, in his individual capacity and in his capacity as Chairman of the Board of Directors, President and Chief Executive Officer for Metlife, Inc.; William J. Wheeler, in his individual capacity and in his capacity as Executive Vice President and Chief Financial Officer for Metlife, Inc.; Peter M. Carlson, in his individual capacity and in his capacity as Executive Vice President of Finance Operations and Chief Accounting Officer for Metlife, Inc.; Sylvia Matthews Burwell, in her individual capacity and in her capacity as Director of the Company for Metlife, Inc.; Eduardo Castro-Wright, in his individual capacity and in his capacity as Director of the Company for Metlife, Inc.; Cheryl W. Grise, in her individual capacity and in her capacity as Director of the Company and Lead Director for Metlife, Inc.; John M. Keane, in his individual capacity and in his capacity as Director of the Company for Metlife, Inc.; Alfred F. Kelly, Jr., in his individual capacity and in his capacity as Director of the Company for Metlife, Inc.; James M. Kilts, in his individual capacity and in his capacity as Director of the Company for

Jefferson County, Alabama, on the ground that this Court had original jurisdiction over the action pursuant to 28 U.S.C. § 1331. (Doc. 1). Plaintiff has moved to remand. The parties have submitted briefs and evidentiary submissions and the matter is now ready for disposition.

## FACTUAL AND PROCEDURAL BACKGROUND

The issue before the court involves a securities class action alleging violations of the anti-fraud provisions of the federal securities laws on behalf of purchasers of the common stock of MetLife, Inc. (MetLife or the Company). (Doc. 14).

MetLife is a global provider of insurance, employee benefits and financial services. (Doc. 1-1, Complaint, at ¶ 2). The Company is headquartered in New York, New York, and trades on the New York Stock Exchange. (*Id.*). A significant amount of MetLife's operating income and investment income is intertwined with historical processes, procedures, and policies for investigation and paying claims. One such

---

Metlife, Inc.; Catherine R. Kinney, in her individual capacity and in her capacity as Director of the Company for Metlife, Inc.; Hugh B. Price, in his individual capacity and in his capacity as Director of the Company for Metlife, Inc.; David Satcher, M.D., in his individual capacity and in his capacity as Director of the Company for Metlife, Inc.; Kenton J. Sicchitano, in his individual capacity and in his capacity as Director of the Company for Metlife, Inc.; Lulu C. Wang, in her individual capacity and in her capacity as Director of the Company for Metlife, Inc.; R. Glenn Hubbard; Goldman Sachs & Company; Citigroup Global Markets, Inc.; Credit Suisse Securities (USA), LLC; Barclays Capital, Inc.; Deutsche Bank Securities, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; UBS Securities, LLC; Wells Fargo Securities, LLC; Morgan Stanley & Co.; and J.P. Morgan Securities, LLC.

example is MetLife's use of the Social Security Administration's Death Master File (SSA-DMF). (*Id.* at ¶¶ 3-4). Plaintiff alleges that MetLife would access SSA-DMFs to verify whether annuity policyholders had died so that it could immediately stop making payments to deceased policyholders. (*Id.* at ¶ 4).

However, according to plaintiff, the Company did not regularly access SSA-DMFs to see if death benefit payments were due under life insurance policies or Retained Asset Accounts. (*Id.* at ¶ 5). If either of these occurrences were to happen, MetLife would thereby become immediately liable to begin making payments upon the death of the policyholder. (*Id.*). Additionally, the clock would start to run for escheatment of unclaimed property or benefit funds to relevant state authorities in the event that beneficiaries either could not be located or did not submit a claim to MetLife within the statutory period. (*Id.*).

It is purported that due to the Company's selective use of SSA-DMFs, MetLife issued materially false and misleading statements and made material omissions of fact in its registration statement and prospectus because (1) the Company irregularly used the DMF; (2) the Company might be subject to liability for its irregular use of the DMF; (3) the Company's finances would suffer as a result of its use of the DMF; (4) MetLife failed to reserve sufficient funds for payment to the beneficiaries of deceased policyholders when it knew or should have known that such policyholders

were in fact deceased; and (5) MetLife stated that the New York Attorney General's July 29, 2010, investigation would not alter the Company's financial statements and would not violate state or federal laws. (Plaintiff's Complaint).

Allegedly, MetLife sold Common Equity Units (CEUs) without disclosing information of which the Company knew or should have known, and which has had a substantially negative impact on the price of the Company's common stock once the information was later disclosed. (Doc. 1-1, Complaint; Doc. 14, Plaintiff's Brief in Support of Motion to Remand).

This action seeks recovery, including rescission, for purchasers who purportedly suffered many millions of dollars in losses when the truth about MetLife surfaced, thereby causing its stock price to plummet. (Doc. 1-1, Complaint). Plaintiff's complaint states that this action is "securities class action on behalf of Plaintiff and all other persons or entities, except for defendants, who purchased or otherwise acquired the common stock of MetLife pursuant and/or traceable to the Company's public offering of approximately $300 billion of Common Equity Units ('CEUs') of MetLife, by ALICO Holdings, LLC, on or around March 4, 2011 (the 'Offering') seeking to pursue strict liability remedies under the Securities Act of 1933 (the 'Securities Act')." (*Id.* at 2-3). Plaintiff invokes § 11 of Securities Act (15


U.S.C. § 77k), § 12(a)(2) of Securities Act (15 U.S.C. § 77(a)(2)), and § 15 of Securities Act (15 U.S.C. § 77o).  No state law causes of action are asserted.

It is alleged that underwriters Goldman, Sachs & Co., Citigroup Global Markets, Inc., Credit Suisse Securities (USA) LLC, Barclays Capital, Inc., Deutsche Bank Securities Inc., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co., UBS Securities LLC and Wells Fargo, LLC (collectively, the "Underwriter Defendants"), shared over an estimated $16.5 million in underwriting fees in connection with the public offering of approximately $300 billion of CEUs.  Defendants in this class action include MetLife, the MetLife executives and directors who signed the Registration Statement, and the Underwriter Defendants.

Defendants removed this action from the Circuit Court of Jefferson County, Alabama, on the ground that this Court had original jurisdiction over the action pursuant to 28 U.S.C. § 1331 since it arises out of the Securities Act of 1933, citing 15 U.S.C. § 77v(a).[2]  (Doc. 1, Notice of Removal).  Plaintiff, City of Birmingham

---

[2] Title 15 U.S.C. § 77v(a), provides in relevant part:

**Federal and State courts; venue; service of process; review; removal; costs.**  The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, except as provided in section 77p of this title with respect to covered class actions, of all suits in equity and actions at law brought to

Retirement and Relief System, has moved to remand this action, claiming that under the Securities Litigation Uniform Standards Act of 1998 (SLUSA), this Court does not have proper jurisdiction. (Doc. 14, Motion to Remand).

## DISCUSSION

**I.    General Removal Standard**

A defendant may remove a case to federal court if it could have been properly filed there originally. 28 U.S.C. § 1441. The removing defendant has the burden of establishing that removal is proper. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996). Courts must construe removal statutes strictly and resolve uncertainties about federal jurisdiction in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

---

enforce any liability or duty created by this subchapter. . . . . Except as provided in section 77p (c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States. . . .

**II.     Securities Class Actions Statutory Background**

The 1933 Securities Act provided for concurrent federal and state jurisdiction over any private cause of action brought under it.  15 U.S.C. § 22(a) (1933). However, the original act also expressly prohibited the removal of any claims made in a state court to federal court, stating that "no case arising under the [1933 Act] and brought in any State court of competent jurisdiction shall be removed to any court of the United States." *Id.*

In 1995, the Private Securities Litigation Reform Act (PSLRA) was enacted in order to reduce abusive litigation.  The PSLRA imposed heightened pleading requirements and required the stay of discovery pending the resolution of any motion to dismiss filed by a defendant. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 80, 126 S.Ct. 1503, 1510, 164 L.Ed.2d 179 (2006).  In order to get around the more stringent requirements of the PSLRA, plaintiffs began avoiding federal forums altogether by bringing class actions under state law, in state court.  *Id.* at 81-82, 126 S.Ct. at 1511.  Consequently, Congress enacted the SLUSA in order to stem the resulting shift from federal to state courts and to "prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Reform Act." *Id.*  In order to limit this undesired effect, the SLUSA

provided an exception to the bar on removal for covered class actions as described in § 77p(c) of the SLUSA. 15 U.S.C. § 77p(c).

Section 77p(c) provides that "[a]ny covered class action brought in any State court involving a covered security, *as set forth in subsection (b)*, shall be removable . . . and shall be subject to subsection (b)." 15 U.S.C. § 77p(c) (emphasis added). The aforementioned subsection (b) preempts certain class actions based on state law and provides that:

> No covered class action based upon the statutory or common law of any state or subdivision thereof may be maintained in any State or Federal court by any private party alleging -
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).

### III. Analysis

The question to be addressed is whether a securities class action filed in state court and brought entirely under the 1933 Securities Act may be removed to federal court. If answered in the negative, then this action was not properly removed and the motion to remand therefore must be granted.

Plaintiff argues that remand is proper since this Court lacks jurisdiction over plaintiff's 1933 Act claims because 15 U.S.C. § 77v(a) provides concurrent state and federal jurisdiction and states that "no case arising under [the 1933 Act] and brought in any State court of competent jurisdiction shall be removed to any court of the United States." (Doc. 12). Defendants argue that removal was proper under both the Securities Act and Class Action Fairness Act of 2005 (CAFA). (Doc. 26).

A.  *Plain Language*

"[I]t is a well established axiom of statutory interpretation that in construing a statute, courts must first look to the plain meaning of the statute itself." *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). If the text of the statute is determined to be clear, the "court's interpretive inquiry" then ends. *Bishop v. Reno*, 210 F.3d 1295, 1298-99 (11th Cir. 2000). Furthermore, "[i]n expounding a statute, [the court] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Id.* If the language within the statute is found to be unambiguous, its plain meaning controls because Congress has clearly expressed their legislative intent through that language. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 238 (11th Cir. 1995).

Varying interpretations of the SLUSA have caused many courts to disagree as to the exact meaning of the Act and what is and what is not prohibited from removal. As mentioned, in order to determine the meaning of a statute all of the provisions must be examined. *Bishop*, 210 F.3d at 1299. The newly-added language in § 77v provides that with some category of cases, concurrent state jurisdiction will no longer be available. Section 77v states that:

> The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter . . . and, concurrent with State and Territorial courts, *except as provided in section 77p of this title with respect to covered class actions*.

15 U.S.C. § 77v(a) (emphasis added).

While § 77v does not specify the type of 1933 Act cases for which state courts will no longer have concurrent jurisdiction, it does refer the reader to § 77p for clarification. Specifically § 77p(c) states that:

> Any covered class action brought in any State court involving a covered security, *as set forth in subsection (b)*, shall be removable to the Federal district court for the district in which the action is pending, *and shall be subject to subsection (b)*.

15 U.S.C. § 77p(c) (2000) (emphasis added).

Furthermore, § 77p(b) indicates that some class action cases brought in state court may in fact be removed if involving a "covered security" and "covered class

action." A "covered class action" is defined in subsection f(2)(A) as being essentially a class action maintained on behalf of more than 50 people; whereas, a "covered security," under subsection f(3), is defined as one that satisfies the standards in § 77r(b) and is defined as one listed on a national securities exchange.

Plaintiff argues that the plain meaning of this statute makes it clear that plaintiff's 1933 Act claims are barred from removal. Contrastingly, defendants argue that the once § 77v(a) was amended to divest state courts of concurrent jurisdiction, the additional phrase put in the section modified the preceding phrase and thereby excluded concurrent state jurisdiction.

Courts have concluded that "the plain language of Securities Act, as amended by SLUSA, clearly and unambiguously permits the removal of only those covered class action complaints that are based on State statutory or common law." *Nauheim v. Interpublic Grp. of Companies, Inc.*, 2003 WL 1888843 (N.D.Ill. Apr. 16, 2003). District courts within the Eleventh Circuit have unequivocally supported this conclusion in a variety of cases. It has specifically been stated that "the plain language of the Securities Act, as amended by SLUSA, clearly and unambiguously permits the removal of only those covered class action complaints that are based on State statutory or common law. . . ." *Steamfitters Local 449 Pension & Ret. Sec. Funds v. Quality Distrib., Inc.*, No. 8:04-cv-961-T-26MAP, ECF No. 18, Order at 3-5

(M.D.Fla. June 25, 2004). Furthermore, it has been stated that "the removal provision set forth in 77p(c) *expressly* incorporates and relies on (b), which in turn refers only to particular types of class actions based on state law. . . ." *Martin v. Bellsouth Corp.*, No. 1:03-CV-728-WBH, ECF No. 24, Order at 4-5 (N.D.Ga. July 3, 2003) (emphasis added).

Because of the Congressional purpose "to restrict the jurisdiction of the federal courts on removal[,]" removal statutes are strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. at 108, 61 S.Ct at 872. Defendants argue that actions would be removable under § 77p(c) because if one were to utilize "better reading," the phrase "as set forth in subsection (b)" in § 77p(c) modifies "involving a covered security." However, if the language of § 77p(c) were to be strictly construed, it forecloses the removal of class actions asserting claims under the Securities Act and would not allow one to alter a statute merely to qualify as a "better reading."

Construing these statutory provisions *in pari materia*, assuming that Congress said what it meant and meant what it said in enacting this legislation, and utilizing Eleventh Circuit precedent, the plain language of the statute clarifies that class actions solely asserting claims under the Securities Act may not be removed from state court.

B.     *Congress' Intent*

If a statute is found to be ambiguous, courts may look at the legislative history to clarify Congress' reasoning and purpose behind the statute. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). Therefore, even if 15 U.S.C. § 77p(c) were determined to be ambiguous, the legislative history could be used to provide some guidance. Unfortunately, the legislative history appears to be murky, thereby providing no direct or clear answer.

Reviewing a limited number of conference reports and statements of Congressmen as to their intent in drafting SLUSA suggests that defendants would have a sound argument. The reports and conference notes provide proof that Congress enacted SLUSA to ensure that federal courts were a haven for litigation of class security fraud claims and that the purpose of the amendments was "to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing in State, rather than in Federal, court." 144 Cong.Rec. H11019-01, H11020 (1998).

However, other cited statements provide substantial support for an inference that Congress intended SLUSA to prevent state courts from becoming a forum for federal securities class actions and to preclude state <u>law</u>, not state <u>fora</u>, from being used in securities class actions. For instance, the first sentence of SLUSA states that

the purpose of the Act is "to limit the conduct of securities class actions under *State law*." *Nauheim*, 2003 WL 1888843 at *5 (quoting Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105-353, 112 Stat. 3227 (1998) (emphasis added)). Furthermore, Congress also stated its purpose for enacting SLUSA was to "prevent plaintiffs from seeking to evade the protections that federal law provides against abusive litigation by filing suit in State court, rather than Federal court." *Id.* (citing H.R. Conf. Rep. 105-803 (1998)). Additionally, a Senate Report explained the intended operation of SLUSA's removal provisions as follows:

> Subsection 16(b) provides that no class action *based on State law* alleging fraud in connection with the purchase or sale of covered securities may be maintained in State or Federal Court.
>
> Subsection 16(c) provides that *any class action described in Subsection (b)* that is brought in a State court shall be removable to a Federal district court, and may be dismissed pursuant to the provisions of subsection (b).

105 S. Rep. 192 at 1 (1998) (emphasis added). Other portions of the Senate Report indicate that the focus of SLUSA is on claims based on state law and states that it would "preempt State law securities actions. . . ." *Id.* at 14. It further goes on to clarify that SLUSA "would preempt securities fraud class actions brought under State law." *Id.* at 19.

Furthermore, plaintiff's brief raises an important point that if Congress had intended to eliminate the concurrent jurisdiction and anti-removal provisions in the

1933 Act, it would have done so explicitly. Indeed, this is a very valuable fact that has been recognized by several federal courts and should be taken into account by this court as well. *See, e.g., In re Waste Mgmt., Inc. Sec. Litig.*, 194 F.Supp.2d. 590, 595 (S.D.Tex. 2002) ("More important, there is no express statement by Congress that it was modifying the traditional rule prohibiting removal of cases brought under the 1933 Act. Congress could easily have made a statement in SLUSA expressly modifying this provision had it so intended."). However, Congress did not include express language that explicitly eliminated the concurrent jurisdiction and anti-removal provisions in the 1933 Act. As a result, this should be taken into consideration as proof that the case at hand should not have been removed.

    C.    *Kircher*

Even if all the above arguments were found to be unpersuasive, the Supreme Court addressed this very issue in a case with facts similar to the one at bar. *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 642-43, 126 S.Ct. 2145, 2154, 165 L.Ed.2d 92 (2006). In *Kircher*, the plaintiff had filed a securities case asserting only state-law claims, in state court. *Id.* at 637, 126 S.Ct. at 2151. The case was then removed to federal court, pursuant to SLUSA, after which the district court granted the plaintiff's motion to remand on the ground that it lacked subject matter jurisdiction on removal because § 77p(b) did not preclude the plaintiffs' claims. *Id.*

at 638, 126 S.Ct. at 2151. On appeal, the Seventh Circuit reversed, holding that SLUSA precluded the plaintiffs' claims. *Id.* at 639, 126 S.Ct. at 2152. On review, the Supreme Court held that, pursuant to 28 U.S.C. § 1447(d), the Seventh Circuit lacked jurisdiction to consider the merits of the district court's decision based on a lack of subject matter jurisdiction. *Id.* at 641-42, 126 S.Ct. at 2153-54. As a result, it reversed the Seventh Circuit and ruled that the action should be remanded. *Id.*

The majority went beyond its decision to remand and instead additionally considered the merits of the district court's decision. Although the analysis was *dictum*, the majority issued an opinion that helps dictate the result in the case at issue. The Supreme Court specifically stated that:

> In sum, we see no reason to reject the straightforward reading: *removal and jurisdiction to deal with removed cases is limited to those precluded by the terms of subsection (b).*
>
> *Once removal jurisdiction under subsection (c) is understood to be restricted to precluded actions defined by subsection (b)*, a motion to remand claiming the action is not precluded must be seen as posing a jurisdictional issue. If the action is precluded, neither the District Court or the state court may entertain it, and the proper course is to dismiss. *If the action is not precluded, the federal court likewise has no jurisdiction to touch the case on the merits, and the proper course is to remand to the state court* that can deal with it.

*Id.* at 643, 126 S.Ct. at 2155 (emphasis added).

As a result, the majority opinion clarifies that a federal district court has no removal jurisdiction under 15 U.S.C. § 77p(c) unless the action being removed is

precluded under federal law, which would be a class action based on state law. Due to the fact that an action based on federal securities law is not precluded by federal law and therefore is the applicable federal law, it cannot be removed to federal court.

    D.    *CAFA*

In the alternative, defendants argue that removal would still be proper according to CAFA. However, this assertion is contradicted by court decisions holding that "[n]one of these concerns resonate in 1933 Act Cases." *See, e.g., Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008). In addition, CAFA's statutory background is replete with references to the fact that CAFA was instead created to make it more difficult for plaintiffs to defeat diversity jurisdiction rather than dealing with 1933 Act concerns. *Id. See* S.Rep. 109-14, 2005 U.S.C.C.A.N. 3, 6; 151 Cong. Rec. S1079 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd).

According to 28 U.S.C. § 1332(d)(9)(C), actions which relate "to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security," are specifically excluded from CAFA's removal provisions. The allegations against defendants fall within this exclusion since their alleged violations under §§ 11, 12(a)(2) and 15 of the 1933 Act are related to actions and

statements made by defendants and their obligations and duties to both the plaintiff and other putative class members.

Furthermore, the rules of statutory construction and reasoning make it evident that CAFA's general provisions would not trump the specific bar against removal contained in § 77v(a) of the 1933 Act.  The Supreme Court has previously made it clear that "[i]t is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976).  Furthermore, "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Id.* (citing *Morton v. Mancari*, 417 U.S. 535, 550-51, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974)).

Section 77v is a statute of precise application and should not submerged by a statute of more general application, such as CAFA.  As a result, CAFA cannot be used to trump SLUSA, and defendants' argument is ultimately not persuasive.

## CONCLUSION

Based on the foregoing analysis, it is ORDERED that plaintiff's Motion to Remand is due to be and hereby is GRANTED, and this action will be REMANDED

to the Circuit Court of Jefferson County, Alabama, thirty (30) days from the date of entry of this order. Any party may seek a review of this order pursuant to Rule 72(a), Fed.R.Civ.P., provided, however, that this order of remand remains in effect unless stayed by the district judge selected to review the order.

DONE this 23rd day of August, 2013.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE